UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

AIX ENERGY, INC.                          CIVIL ACTION NO. 13-cv-3304

VERSUS

BENNETT PROPERTIES, LP, ET AL             MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

AIX Energy, Inc. is the unit operator of mineral production units in Claiborne Parish. A question arose regarding entitlement to royalties among competing interest owners. AIX commenced this interpleader action to bring together more than 25 claimants and allow them to be heard on the issues. The court authorized AIX to deposit the disputed royalties in the registry of the court.

Several of the competing claimants have presented motions that are now before the court. Those motions are: (1) Motion for Partial Summary Judgment (Doc. 69) by Bennett Properties, LP and Sale Family Properties, LLC; (2) Motion for Partial Summary Judgment (Doc. 70) by J. Edwin Sale; (3) Motion for Summary Judgment (Doc. 72) by the Murphy heirs; and (4) Motion for Partial Summary Judgment (Doc. 78) by Benjamin S. Merrit and Melanie Laura Sale Merrit.

The first three groups of movants base their claims on a continuation of a mineral servitude by production from lands within the scope of a unit agreement that included the

subject property. There is no evidence that their predecessor in interest, Thomas Sale, Jr., signed the unit agreement, but there is compelling evidence that Sale tacitly consented to or ratified the agreement by signing division orders that included an express ratification clause, accepting payments from unit production, and otherwise acting consistently with having joined the unit.

Benjamin S. Merrit and Melanie Laura Sale Merrit ("Merrit Defendants") are the only parties among the current movants who dispute that conclusion. They do not dispute whether Thomas Sale, Jr. ratified the unit agreement, but they argue that any documents or actions that constitute the ratification are not binding on them because those documents were not contained in the public conveyance records. The competing movants respond that Louisiana law provides that a tacit acceptance or similar matter pertaining to a recorded instrument is effective as to a third person even if the acceptance is not recorded. For the reasons that follow, the court agrees that Mr. Sale's tacit consent to and ratification of the unit agreement was binding on the Merrit Defendants.

**Background Facts**

The attorneys for the parties have obviously done a great deal of work gathering the necessary documents and title records, and they have set forth the historical facts in considerable detail. The facts set forth below are a mere summary of the record they have assembled, but they are presented with a focus on those facts necessary to decide the issue now before the court.

Thomas Sale, Jr. and his wife Mary Belle Fagg Sale owned land in Claiborne Parish when, in the 1950s, operators and mineral interest owners in the area executed or ratified a unit agreement. The unit agreement provided in Article 16 that it would be binding upon "each party who executes or ratifies it as of the date of execution or ratification by such party" and would become effective following the execution or ratification by certain percentages of working interest owners and persons owning royalty interests. The agreement, dated December 1, 1958, created the East Haynesville Birdsong-Owens Field, Claiborne Parish, Louisiana. The property at issue in this suit was entirely encompassed within the Birdsong-Owens Unit.

There is no record showing that Thomas Sale, Jr. signed the unit agreement, but he did sign division orders on October 8, 1959 that were issued by Placid Oil Company. Placid was purchasing oil produced from the unit at the time, and the division orders set forth which interest owners were entitled to what percentage of revenues. The division order that Sale signed included this provision:

> Until further notice each of the undersigned authorizes you, for your own account to receive his allocated portion of the oil produced and saved from the East Haynesville Birdsong-Owens Unit, in accordance with that certain agreement, *hereby ratified for all purposes*, dated December 1, 1958, Registry No. 221047 of the Conveyance Records of Claiborne Parish ... (emphasis added).

Soon afterward, Thomas Sale, Jr. and several other persons executed an Act of Partition dated October 29, 1959 that partitioned land co-owned by them in Claiborne Parish. The partition included language that reserved to those parties, in proportions then owned by

them, all of their right in and to the minerals that may be produced from the land. Thus, the parties to the 1959 partition created a mineral servitude that burdened the tracts of land formerly co-owned by them.

After executing the division orders, Thomas Sale, Jr. was paid from production from the unit based on the share represented by his mineral interests within the unit. He received checks from Placid and Hunt for oil and gas royalties consistent with holding an interest in the Birdsong-Owens Unit. In 1980, Thomas Sale, Jr. signed a statement of eligibility regarding tax withholding that certified he had an economic interest in the unit. After his death, his wife and, eventually, his children were paid based on his interest in the unit. The Bennett and Sale movants, together with those who embrace their position, represent that from the inception of the unit until its consensual termination effective October 1, 2007, there has been no period of 10 years without production from the unit.

**Analysis**

### A. Public Records Doctrine Issue

The parties appear to agree that Mr. Sale owned a mineral servitude with respect to the relevant property. A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership. La. R.S. 31:21. A mineral servitude is extinguished by prescription resulting from non-use for 10 years. La. R.S. 31:27. Prescription of non-use is interrupted by the production of any mineral covered by the act creating the servitude.

Prescription commences anew from the date of the cessation of actual production. La. R.S. 31:36.

There is no evidence that there was production from the tracts that Mr. Sale held a servitude on. But there is evidence of production from other lands within the unit that included the Sale property. Production from a conventional or compulsory unit embracing all or part of the tract burdened by a mineral servitude interrupts prescription. La. R.S. 31:37. No party has contested that there was production from land within the unit that would, if it applied to the Sale property, interrupt prescription and continue in effect the Sale servitude.

A contract such as the unit agreement is formed by the consent of the parties established through offer and acceptance. La. Civ. Code art. 1927. The unit agreement specifically provided for the possibility that a mineral interest owner would bind himself to the agreement through later ratification. That was consistent with the law that, unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which acceptance is made. Id. And, unless the law prescribes a certain formality for the contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. Art. 1927.

The movants who rely on the continuation of Mr. Smith's servitude argue that he consented to the unit agreement by signing the division order, and his other actions, even though he did not formally affix his signature to the unit agreement itself. No party argues that Article 1927 would not allow such consent.

The movants who rely on the continuation of Mr. Smith's servitude also argue that Smith gave his consent by ratification, which La. Civ. Code art. 1843 defines as a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority. The article allows for a tacit ratification, which results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation. The comments to the Article, enacted in 1984, state that it does not change the law, and it merely clarified the concept of ratification contained in the 1870 Code that applied in 1959. Although the Article's mention of "without authority" suggests a limitation to agency issues, Louisiana courts "have long applied it to sales and leases." Means v. Comcast, Inc., 17 So.3d 1012, 1014 (La. App. 2d Cir. 2009) (new landowner was bound by unrecorded lease when he ratified it by accepting rent and other benefits of the lease).

The Merrit Defendants acknowledge that the pending motions present the issues of (1) whether Thomas Sale, Jr. ratified the unit agreement and (2) whether Benjamin Merrit is bound by the unit agreement. The Merrit Defendants state that they dispute only the second issue. Considering the lack of opposition on the first issue, the applicable law, and the factual record presented, the court finds that Thomas Sale, Jr. did ratify and accept the unit agreement so that he was bound by it as a party.

Deciding whether Benjamin Merrit is also bound by the effects of the unit agreement requires a discussion of how he acquired his interest in the property. After Thomas Sale, Jr. and his wife died, their four children became the owners of the surface and mineral rights in the disputed property. The children partitioned the property, subject to the mineral interests

previously created.  Melanie Laura Sale Merrit, one of those  four children, acquired the surface ownership of the disputed property as a result of that partition.  Benjamin Merrit represents that he bought the subject property from Melanie Sale Merrit by cash deed dated December 29, 2011.  It does not appear that this deed is in the record, but no party has contested that it was the means of Benjamin Merrit's acquisition.

The Louisiana Public Records Doctrine generally provides that an instrument in writing that affects immovable property rights but is not recorded is null and void except between the parties.  The doctrine has been set forth in various code articles and statues over the years, but it is now found in La. Civ. Code art. 3338.  <u>Cimarex Energy Co. v. Mauboules</u>, 40 So.3d 931, 943-44 (La. 2010).  The article, which was in effect at the time Benjamin Merrit acquired his interest in 2011, provides that an instrument that establishes a real right in or over an immovable is without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records.  The unit agreement was recorded, but Thomas Sale, Jr.'s acceptance/ratification of the agreement was not  recorded.

The Merrit Defendants argue that Benjamin Merrit is a third-party who is not bound by Thomas Sale, Jr.'s unrecorded acceptance of the unit agreement.  The other movants offer arguments in response, including invocation of La. Civ. Code art. 3339.  It provides:

> A matter of capacity or authority, the occurrence of a suspensive or a resolutory condition, the exercise of an option or right of first refusal, *a tacit acceptance*, a termination of rights that depends upon the occurrence of a condition, *and a similar matter pertaining to rights and obligations evidenced*

Page 7 of  10

> *by a recorded instrument* are effective as to a third person although not evidenced of record.

The Merrit Defendants argue that Article 3339 may state that a tacit acceptance need not be recorded to be effective against third parties, but it does not say that a tacit ratification need not be recorded. They argue that the terms are distinct in meaning and that tacit acceptance is limited to successions.

The court disagrees that the article is so limited. First, the parties have often referred to what Mr. Sale did as a ratification of the unit agreement, but it is also accurately characterized as a tacit acceptance through Sale's actions and inactions that were clearly indicative of his consent. Second, Article 3339 is broadened by including within its scope "a similar matter pertaining to rights and obligations evidenced by a recorded instrument," and the acceptance/ratification of the unit agreement by Sale's signing of the division order falls easily within a reasonable reading of that language.

Any third party who was researching the title to the subject property would have encountered the unit agreement and seen that it included the subject property within its scope. They would not have seen Mr. Sale's signature on the recorded instrument, but they would have seen that the agreement expressly provided for later ratification by interest owners. A reasonable person or title examiner would have known that it was possible the agreement was effective with respect to the property despite a recorded signature from Sale. That is precisely what happened in this case when AIX retained an attorney to investigate the title to the property.

Attorney Thomas G. Smart of the Onebane Law Firm issued a lengthy opinion that noted the presence of the unit agreement in the public records. His opinion stated on page 82 that he did not have any information as to whether Sale or his successors or assigns accepted payment of royalties or other payments on production based upon the unit agreement, and thus whether an argument could be made that Sale acquiesced or impliedly accepted the unit agreement. Smart issued his opinion based on an assumption that was not the case. Now, however, there is evidence that Mr. Smart did acquiesce or tacitly accept the unit agreement, and he even signed a document that expressly ratified the agreement. That evidence, even though not of record, is binding on the Merrit Defendants because of Article 3339.

### B. Cross-Claims

Some of the movants have requested in their motions for partial summary judgment that the court also dismiss the Merrit Defendants' cross-claims against them for damages and injunctive relief. The cross-claims assert that the other claimants, by asserting the rights that the court has found to exist, wrongfully clouded the Merrit title and gave rise to a claim for damages. The Merrit Defendants have not defended the legal basis for the cross-claims; they have simply asserted the public records doctrine argument addressed above. That argument have been rejected, so there is no factual or legal basis for the cross-claims. The court will grant the other movants summary judgment and dismiss those cross-claims.

**Conclusion**

For these reasons, the (1) Motion for Partial Summary Judgment (Doc. 69) by Bennett Properties, LP and Sale Family Properties, LLC; (2) Motion for Partial Summary Judgment (Doc. 70) by J. Edwin Sale; and (3) Motion for Summary Judgment (Doc. 72) by the Murphy heirs are granted as follows: The court declares that (A) Thomas Sale, Jr. ratified or consented to the Birdsong-Owens Unit Agreement; (B) production from the unit has maintained the mineral interests owned by the movants in full force and effect; (C) the subject mineral interests have not prescribed for non-use; and (D) the Birdsong-Owens Unit Agreement was effective against Benjamin Merrit when he acquired his interest in the property. Those motions are further granted by dismissing the Merrit Defendants' cross-claims for damages and injunctive relief. The Motion for Partial Summary Judgment (Doc. 78) by Benjamin S. Merrit and Melanie Laura Sale Merrit is denied.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of September, 2016.



Mark L. Hornsby
U.S. Magistrate Judge